## THE AUSABLE.

(District Court, E. D. New York. November 21, 1919.)

SALVAGE ⬩⟜13—ALLOWED FOR TOWING VESSEL DRIFTING IN PORT.

Two tugs, which in response to distress signals rendered service in moving a partially loaded steamer, which had dragged her anchor, and drifted over the anchor chain of another vessel, and was in danger of fouling her propeller, *held* entitled to salvage compensation.

In Admiralty. Suit by Leta D. Potter against the steamer Ausable. Decree for libelant.

Foley & Martin and J. A. Martin, all of New York City, for libelant.

Barry, Wainwright, Thacher & Symmers and John C. Prizer, all of New York City, for claimant.

CHATFIELD, District Judge. The facts seem to be that the Ausable was in a position where conditions had to improve or where considerable danger might have resulted. The Ausable was loaded heavily below decks. She was taking on a deck cargo from at least four barges alongside, and had been dragging her anchor, under the influence of the flood tide and the southeast wind. She reached a position where she was dangerously close to the Kenny, which was at anchor, but which apparently had insufficient crew on board even to drop back out of the way.

This occurrence happened on the 24th day of July, 1919, so that no likelihood of storm enters into the case. It was broad daylight until after the Ausable had been finally brought to an anchorage; the wind, if anything, had died down during the afternoon, and the Ausable was not moved until nearly high water. Her drifting had been checked or stopped by putting out a starboard anchor and then hauling in on the port anchor chain, so as to take up at least the amount which it had been lengthened during the previous night, and so as to bring the boat into a position where she would swing evenly with the tide from both anchors. According to the witness Bousak, she brought up on these anchors in such a position that her stern actually moved over the anchor chain of the Kenny back and forth, without fouling that anchor chain. Subsequently the Ausable must have settled back to some extent, for all of the other witnesses, including the captain of the Ausable, testified that the anchor chain of the Kenny led down forward of the rudder post and rudder of the Ausable, and, if the drifting of the Ausable had been stopped, there must have been something in the conditions of wind and tide which allowed the Kenny and the Ausable to move toward and away from each other, as well as for the Ausable to swing back and forth.

It seems more likely, from all the testimony, that during the afternoon the Ausable in some way worked into a position where she was actually against the chain of the Kenny, and in such a situation that the captain of the Ausable was justified in his assumption that she had better be moved from that position before the tide changed, and that

it was dangerous to turn over his own propeller, for fear that this anchor chain was actually afoul the propeller and was wound around it. It appears that the Ausable blew what were to be interpreted as distress signals, or signals for assistance. At first the captain intended his calls for the tug which had been handling the lighters, which had left for South Brooklyn shortly after noon, and which did not return until after the Ausable was finally at anchor. It appears that the captain of the Ausable blew these whistles and was looking for assistance for at least an hour and a half, and that he was finally answered by the Juno, a moderate sized tug ordinarily employed in bringing vessels in from outside the Hook. The captain of the Juno took charge of the Ausable at the request of the first officer in command of the Ausable, reached the conclusion that it was unwise to move the Ausable without further assistance, and called in the Emma J. Kennedy by an additional whistle that was equivalent to a distress whistle or call for assistance.

The Kennedy came from Staten Island, and with the Juno attempted to draw the Ausable away from proximity to the Kenny. This was accomplished by taking a hawser from the Ausable to the Kennedy. There is a dispute as to whether the Juno assisted in starting the Ausable away from the side of the Kenny, because some of the witnesses on the Ausable did not see any indications of working of the engines of the Juno. Under the circumstances, it makes very little difference, because the presence of the Juno made it possible to carry out the maneuver without risk, and, if the Juno used her own power, it would entitle her to little more compensation than if she had merely towed alongside in readiness. In any event, the engines of the Ausable were started as soon as the distance away from the Kenny was such that it was certain that the propeller was not fouled in the Kenny's chain, and after that the Ausable proceeded to what was thought a proper anchorage; but on testing this, and particularly upon the request of the first officer of the Ausable, the boat was moved further, which took a few moments of time, but does not enter into the question of salvage.

The whole operation indicates that if the Ausable had been left alone she might have swung clear when the tide changed, as apparently the danger was diminishing, instead of increasing, if the propeller did not get fouled in the anchor chain. But during the time that the Ausable was calling for assistance the situation was such that she certainly needed assistance, and the solicitation of a removal from danger was not that of obtaining a tow, but was evidently a seeking for help. The danger which she was in would be estimated more by the possible delay in undertaking her voyage, the difficulty of making any repairs to the loaded vessel, if her cargo had to be lightened so that her stern could be raised in order to get at the propeller, and the incident expenses of making any repairs at all, rather than the possibility of loss either of the boat or of her cargo. In fact, the danger from the standpoint of the value of the boat and of her cargo does not enter into the value of the services rendered. The situation is not one in which a percentage of either the value of the boat or her cargo

could be taken as a basis for compensation, nor should the mere value of the towing services rendered in taking the boat to an anchorage be the basis for compensation.

The Kennedy was a joint party in the undertaking, but, of course, did nothing except tow the boat. The Juno and her captain undertook the operation, assuming entire responsibility, which later was shared with the captain of the Kennedy; and yet, after the engines of the Ausable began to work, the services actually rendered for the next half hour were merely those of the ordinary towboat, whose captain was acting as pilot upon the steamer.

I think that makes it apparent that the award should not be judged from the standpoint of the towing service, nor from the standpoint of possible loss of the ship or her cargo. Taking into account the damages which the first officer of the Ausable had a fair reason to apprehend, and which he was endeavoring to avoid at the time that he sought to get his boat away from the Kenny, an award of $750 to the Juno and $250 to the Kennedy would be proportionate, and you may have a decree for that amount.